ELLA M. PICKEL v. FREDERICK PICKEL, Appellant—No. 21,146.

ELLA M. PICKEL v. FRED J. PICKEL, Appellant—No. 21,147.

In Banc, December 30, 1921.

1. **LAW AND EQUITY: Distinction.** Under the statute (Sec. 1727, R. S. 1909) declaring that "there shall be in this State but one form of action for the enforcement or protection of private rights, and redress or prevention of private wrongs," the distinction between law and equity does not and cannot lie in the form of the action, whatever that form may be, but must lie in the nature of the remedy sought. Wherever a statute authorizes equitable relief as an incident to the ultimate right, the action to that extent is equitable.

2. **MAINTENANCE AND DIVORCE: Sequestration of Property: Origin.** The jurisdiction in cases of divorce and maintenance, in so far as it is derivative, has come down from the English ecclesiastical courts, the jurisdiction of which extended over the marital relation, and not through the common law; but such remedies as compulsory security and sequestration in aid of a decree for maintenance, in either a divorce or maintenance pro-

ceeding, originated in equity, and are preserved alike in the statutes relating to each (Secs. 8295 and 2375, R. S. 1909).

3. MAINTENANCE IN DIVORCE SUIT: Alimony. The General Assembly has from the beginning made the maintenance of the wife as distinguished from alimony an element of relief 'to be granted in divorce cases. The statutes give to the wife her choice to take a decree of divorce from bed and board, with maintenance, instead of a decree to a divorce *a vinculo* to which she may, upon the facts, be entitled; and under them, the abandoned wife may sue for maintenance in lieu of the 'absolute divorce to which the same abandonment, might entitle her.

4. JUDGMENT FOR MAINTENANCE: Sequestration of Property: Bond: Made Available in Divorce Decree. The wife brought a suit for maintenance, alleging abandonment, intolerable indignities, cruelty, etc., and obtained a decree allowing her $1490 for expenses of suit, $500 attorney's fee, $160 for past maintenance, and $100 per month to be paid in the future. 'Her husband transferred certain certificates of stock to his father, and thereby defeated execution on her judgment. Subsequently she brought suit in equity against her husband and his father, in aid of her said judgment, alleging that execution had proved unavailing, that said transfer of stock was fraudulently made to defeat the collection of. her judgment, and that the stock was worth $12,000, and prayed that it be sequestered for the payment of her monthly allowance and the other items adjudged to her. The court adjudged the transfer was fraudulent and the value of the stock to be $12,025, and decreed that, the father, in lieu of a surrender of the stock, should pay the amounts already due (which, in the aggregate amounted to nearly $2,000) and give bond in the sum of $10,000 for the payment of the monthly allowances as they became due in the future; otherwise, the transfer was cancelled and the father enjoined from selling the stock. The amount of the payments to be made and of the bond about equalled and was intended to equal the adjudged value of the stock, but the decree was *in rem*, and its effect limited to the property only, and had no effect as imposing any liability against the father otherwise than as compensation for its fraudulent taking and its retention by him under the terms of the decree, and in no way affected the ownership of the stock as between him and his son, But the decree bound the father to pay the monthly maintenance and the other items already adjudged and to respond in like manner to "any modification thereof or order supplemental thereto" to the extent of the penalty of the bond, and the court reserved jurisdiction and gave leave for all parties to apply to the court for further orders as should be necessary or proper to enable the plaintiff to collect her claim. The father paid the

amounts which the decree adjudged should be paid in cash, and gave bond to pay the monthly allowances as they became due, and to comply with any modifications of the decree subsequently made. Five years later the wife brought suit for divorce, alleging the same grounds therefor that she had alleged in her suit for maintenance. The defendant by his answer admitted the charges in her petition, expressly admitted he was a drunkard and a vagrant, and vigorously pleaded his poverty. The evidence showed the defendant's father was very wealthy. Pending the decree in the divorce suit, the court made a supplemental order in the maintenance suit, by which there was adjudged to plaintiff, instead of a monthly allowance, maintenance in gross in the sum of $10,000, to be paid by the father, and if not so paid the $12,000 in stock, still in custody of the court, would be sold and the proceeds awarded the plaintiff. Thereafter the court granted the divorce and decreed that "the plaintiff have and recover of defendant as alimony and maintenance in gross the same sum of $10,000 awarded her as maintenance in gross by said supplemental order of even date herewith in said maintenance case, the said sum of $10,000 to be collected, however, by process in said maintenance case, and no execution to be awarded plaintiff herein except on special order of this court." From the order in the maintenance case and the judgment in the divorce case defendant prosecutes separate appeals, and both are heard together. *Held*, that the bond, in the maintenance suit given by defendant's father, represented the property of the defendant in the possession and under the control of the court, and the statutory power of sequestration in aid of its decree conferred upon the court the right to apply said property to the payment of whatever sum was awarded plaintiff as her alimony in the divorce decree, and both judgments are affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones*, Judge.

AFFIRMED.

*Fauntleroy, Cullen & Hay* for appellant.

(1) It was palpable error for the court to engraft the divorce action on the maintenance case "in aid of the decree in said divorce case and in anticipation thereof." Sharpe v. Sharpe, 134 Mo. App. 278. (2) The Legislature has by enacting separate and distinct stat-

Pickel v. Pickel.

utes given two forms of action by which the wife may force the husband to support her—divorce and maintenance. In the first she must ask for a dissolution to obtain permanent support; in the second, she must affirm the marriage relation and claim rights under it. Therefore, the court has no jurisdiction or power to keep the maintenance case alive after the granting of a divorce, and this novel and ingenious theory that the maintenance judgment must be kept alive for the benefit of the plaintiff, who desires a divorce, is unprecedented and not sustainable under any known legal rules. (3) The entry of the decree of divorce necessarily cancels, nullifies and ends the decree of maintenance. Pritchard v. Pritchard, 189 Mo. App. 470; Creasy v. Creasy, 168 Mo. App. 98. Therefore, the only thing the court could possibly do is to overrule the motion filed in the maintenance case and grant the wife a divorce in the divorce case, allowing such alimony as would be just, considering the financial responsibilities of the defendant. (4) The plaintiff should not have been given any relief in this case for the reason that the divorce case was pending at the time this motion for allowance in gross was filed. The divorce suit was filed April 24, 1917. The motion for maintenance in gross was filed June 30, 1917, so at the time this proceeding was instituted on this motion for maintenance in gross, the divorce suit was pending and undisposed of. The rule of law applicable to such a state of facts is thus stated in 1 Corpus Juris, sec. 37, p. 45, as follows: "It is a well-settled general principle of the law that the pendency of a prior action or suit for the same cause, between the same parties, in a court of competent jurisdiction, will abate a later action or suit either in the same court or in another court of the same jurisdiction." This rule is sustained by the controlling authorities. Smith v. Sedalia, 244 Mo. 107; Warder v. Henry, 117 Mo. 530; Libbe v. Libbe, 157 Mo. App. 610; State v. Hines, 148 Mo. App. 298; Tire Co. v. Webb, 143 Mo. App. 679; Walter Commn. Co. v. Gilleland, 98 Mo. App. 584. It

will be noted that in the divorce case, plaintiff prays for all the relief she could possibly be given in the maintenance suit, she asking therein for alimony permanent and temporary. Having filed a divorce suit wherein she was asking for the same relief, she thereby abandoned the maintenance suit, and is precluded from maintaining same, because of the pendency of the divorce suit. Libbe v. Libbe, 157 Mo. App. 610; In re Morgan, 177 Mo. 24. (5) The filing of the divorce case and its prosecution was such an election of remedies as precludes any relief in the maintenance suit. 15 Cyc. 259 to 263; 9 R. C. L., Election of Remedies, secs. 1, 3; Kearney Milling Co. v. Union Pac., 97 Iowa, 719, 59 Am. St. 434. That these two actions are inconsistent is apparent. The maintenance suit proceeds on the theory that the marriage relation continues, the divorce case proceeds on the theory that the marriage relation ceases and is to be dissolved. The filing of the divorce case is an abandonment of the maintenance action and the effect of abandonment of one action and the institution of a new one for the same relief is conclusive against any relief being granted in the case abandoned. 1 Corpus Juris, pp. 1169, 1170. (6) The allowance is excessive. The bond was substantially paid. There is substantially nothing due from William Pickel under the ten-thousand-dollar bond. By the fifth paragraph of the decree, William Pickel was given the privilege of giving bond in the sum of $10,000, conditioned upon the payment of sums of money falling due after the execution of the bond, and also requiring him to pay all money due up to the time the bond was executed. By the sixth, seventh and eighth paragraphs of the decree the title to the property was to be vacated and set aside, but it was not to be vacated if William Pickel would give a bond. William Pickel elected to give a bond, and, by the ninth paragraph of the decree plaintiff was enjoined from levying an execution on the property ''so long as the said William Pickel shall continue to pay the money due from the plaintiff, as and when the same

shall become due, to the full amount of said bond.'' The only possible construction of this decree is that the payment of the sums of money then due and the payment of the bond to the full amount of said bond, would vest the title to the property in dispute in William Pickel. Plaintiff had full knowledge of this alternative decree, and was fully advised that the payments made were made by William Pickel, and, therefore, is not in a position to attack the transfer of the stock from Frederick J. Pickel to William Pickel in consideration of William Pickel's assuming and paying all moneys due her at the time the bond was given and all moneys falling due to the full amount of the bond. Under the authorities it is clear that neither she, nor anybody else, can attack the validity of the retransfer, under the terms of this decree, of the property from Frederick J. Pickel to William Pickel. Torreyson v. Turnbaugh, 105 Mo. App. 439; Thompson v. Cohen, 127 Mo. 215; Byrd v. Hall, 196 Fed. (C. C. A.) 762. The judgment in the case is, therefore, excessive. The defendant, a mere laboring man, is earning $27.50 per week, has no property, has already expended on his ex-wife all the property he had, amounting to over $12,000, is now mulcted in the sum of $10,000 in gross. That such an allowance is excessive is so palpably plain as to be visible to the untrained eye of a layman. Fahey v. Fahey, 43 Colo. 354, 127 Am. St. 118. (7) That an allowance in a maintenance case is from month to month, and not for a gross sum, is directly sustained by the great weight of authority, and is apparent from the reading of our statute. This action and the previous action is for monthly installments and the court has no authority to allow a gross sum to cover all future time. Therein is the vital difference between actions for divorce and maintenance. Under Section 8295 of our statute, there is no authority for the allowance of a sum in gross in a maintenance suit. Kusel v. Kusel, 81 Pac. 296. Section 8295 declares that ''the court shall order such support for the wife for such time as the nature of the case and the cir-

cumstances of the parties shall require, and from time
to time make such further orders touching the same as
shall be just.'' Under such a statute it is clear that the
court, at any time, has the right to modify such decree
and wipe the same out altogether, so far as it relates
at least to future payments. 1 R. C. L. sec. 92, p. 946;
Creasy v. Creasy, 168 Mo. App. 110; Creasy v. Creasy,
175 Mo. App. 239. A judgment for maintenance must
be subject to the control of the court which entered it,
and may be modified at any time. A judgment in a
maintenance case for monthly sums is not such a judg-
ment as is entitled to full faith and credit, because it ·
is for sums falling due after the rendition of the judg-
ment. Such a decree is not final judgment as to pay-
ments in the future. Lynde v. Lynde, 181 U. S. 183; Is-
real v. Isreal, 148 Fed. (C. C. A.) 576, 9 L. R. A. (N. S.)
1168; Valequet v. Valequet, 177 Fed. 994; Lynde v.
Lynde, 162 N. Y. 405, 48 L. R. A. 679. See, also, Mayer v.
Mayer, 154 Mich. 386, 19 L. R. A. (N. S.) 345, 129 Am.
St. 477. The entry of a judgment in the divorce case
marks the end of the continuing judgment in the main-
tenance case.

BROWN, C.—This court has become familiar with
these cases in their different aspects in Pickel v. Pickel,
243 Mo. 641; Same v. Same, 251 Mo. 197; Same v. Same,
259 Mo. 202; in which it has had occasional relief from
the St. Louis Court of Appeals in Same v. Same, 176 Mo.
App. 673; Same v. Same, Id. 714; Same v. Same, 179
S. W. 949. The facts are so fully spread upon the records
of these courts as to simplify the task of restating them.
Although counsel for respondent appeared and favored
us with oral argument at the hearing, it was suggested
that financial consideration had prevented the filing of
a brief for their client, so that we ·must rely entirely
upon the printed abstract and brief of appellant, to-
gether with such recollection as we have of the oral ar-
gument to assist us in the formulation of our views.

The first of these cases (No. 21,146) is a proceeding in the St. Louis Circuit Court, under our statute, for divorce and alimony. The second (No. 21,147) is for the separate maintenance of the wife and child, also under our statute (Sec. 8295, R. S. 1909). The issues are so interwoven that they will be treated as integral parts of one case.

The maintenance case was instituted in the St. Louis Circuit Court by respondent on October 20, 1910. An amended petition was filed February 12, 1911. It charges (1) abandonment; (2) habitual drunkenness; (3) cruel and barbarous treatment, such as to endanger her life; (4) such indignities as to render her condition intolerable. It states that the parties were married on September 1, 1904; that on September 13, 1905, a son, Frederick J. Pickel, Jr., was born to them; that she continued to live with her husband in St. Louis until her abandonment in 1910, since which she and the child had lived with her mother in Chicago, and were entirely without means of support, while defendant was possessed of ample property and means, from which he derived a large income. It closed with the following prayer:

"Wherefore plaintiff prays the court to order and adjudge such support and maintenance to be provided for her and her said child by such marriage out of defendant's property, and for such time as the nature of the case and the circumstances of the parties shall require, and from time to time to make such further orders touching the same as shall be just, and to enforce its judgment by execution, sequestration of defendant's property, or by such other lawful means as are in accordance with the practice of the court.

"Plaintiff further prays the court to make an order on the defendant to pay to the plaintiff a gross sum to cover the expenses of prosecuting this suit, including a reasonable fee for her attorney, to be determined by the court upon the final hearing hereof, and a monthly allowance sufficient to support herself and her child

during the pendency of this suit. Plaintiff asks all further and proper relief, including the costs of this cause.''

The defendant answered on March 1, 1911, by general denial and ''recriminatory matter,'' not stated in the record. On the 15th of the same month a decree was entered finding that the defendant had, without good cause, abandoned the plaintiff, and refused and neglected to maintain and provide for her, and that she was entitled to maintenance for herself and child, and decreeing maintenance at the rate of one hundred dollars per month, beginning April 1, 1911. The court also, by the terms of the decree, retained jurisdiction, with leave to the parties to apply from time to time for such supplemental orders as might be necessary to protect the rights of the parties under the decree, such reserved jurisdiction to continue until the further order of the court. It also reserved jurisdiction for the purpose of fixing compensation of plaintiff's attorneys. The decree concluded as follows:

''The order of the court heretofore made here on November 5, 1910, shall govern the payments of money due from the defendant to the plaintiff to and including the installment of forty dollars to become due thereunder on March 1, 1911, but from and after said date no further money shall be due from defendant to plaintiff under said order of November 5, 1910, and said order shall be deemed to be merged in this decree as of the date of April 1, 1911, but nevertheless shall remain in full force and effect as to all moneys due prior to that date, and as to all proceedings had or taken by the plaintiff to collect the same or any part thereof.''

This decree was rendered in Division No. 3 of the St. Louis Circuit Court, in which the proceeding was pending. Afterwards, there being several installments of the maintenance allowed by said decree due and unpaid and executions therefor having been returned unsatisfied, a petition was filed by the plaintiff to subject certain stocks of the value of ''at least'' $12,025 claimed by her to be the property of Frederick Pickel, the de-

fendant, and to have been transferred by him to William Pickel, his father, to defraud his creditors, and particularly the plaintiff. This proceeding, which is called in the record the sequestration suit, went to final judgment in the St. Louis Circuit Court in plaintiff's favor. By its decree the court found and held that certain sums were due from defendant to plaintiff under certain orders and decrees rendered in the maintenance suit, but from which no appeal had been taken. That this defendant was insolvent except as to the property involved in said proceeding, consisting of stocks valued by the court at *at least* $12,025, that these had been transferred to the defendant William Pickel by plaintiff with the design and intention of hindering, delaying and defrauding the plaintiff of the moneys to become due her under such orders and judgments of the courts as might be rendered in litigation then contemplated, and for the purpose of enabling the defendant Frederick J. Pickel to escape his legal obligation to take care of and provide for his wife and child, and that said transfers were fraudulent and void. The decree then proceeds as follows:

"(5)    That the defendant William Pickel may, within ten days from the date hereof, pay the plaintiff all moneys due to her under the aforesaid orders and judgments of the said courts, and unpaid, as heretofore found in paragraph 1 hereof, with interest on all from the date of the maturity of each installment until paid, and also the costs hereof, and the attorney's fee herein allowed, and may, within said time, execute and deliver to the plaintiff his bond, in the full and just sum of ten thousand dollars, in due form, the form and security to be approved by the court, conditional for the payment by him to the plaintiff of all moneys to become due to her hereafter under the said final decree of March 15, 1911, and until such modifications thereof, or orders supplemental thereto, as may be made from time to time by the court having jurisdiction of the cause wherein the same is entered.

"(6)   If the said William Pickel shall fail, within said time, to pay said amounts, and to execute said bond, then, and in that case, it is ordered, adjudged and decreed by the court:

"(7)   That the said transfers of stock (described in paragraph 3 hereof) from Frederick J. Pickel to William Pickel, be, and the same are, hereby vacated and set aside.

"(8)   That said defendant William Pickel and Frederick J. Pickel are each and both of them enjoined and prohibited from transferring or assigning, and from attempting to transfer and assign, and from delivering, hypothecating, mortgaging, pledging or encumbering, said stock, or any portion thereof, or any certificate or certificates thereof, and from setting up any claim thereto, or to any part thereof, of any kind or character, against any execution which plaintiff may cause to be issued on said orders and judgments mentioned in paragraph one hereof, or either of them, and levied upon the same, or upon any part thereof; and they and each of them are further enjoined and restrained from obstructing, delaying, and from attempting to obstruct or to delay, by the filing of any notice, third-party claim, bond or other paper, or in any other manner or form whatsoever, any sale under any such execution which the plaintiff may cause to be levied on said stock, or any part thereof.

"(9)   That, if the defendant William Pickel shall avail himself of the benefit of paragraph 5 of this decree, and shall well and truly pay the money and execute and deliver the bond, within the time therein limited, then, and in that case, and so long as the said William Pickel shall continue to pay the money due to the plaintiff, as and when same shall become due, to the full amount of said bond, the plaintiff is enjoined and restrained from suing out any execution or executions to collect said money, or any part thereof.   But, if and when said William Pickel shall fail to pay any installment of money to plaintiff, as and when the same be-

comes due, this injunction, created by this, the nineth paragraph of this decree, shall be and stand dissolved.

" (10)    An attorney's fee of five hundred dollars is allowed plaintiff's attorney of record, for which let special execution issue against the shares of stock described in paragraph 3 hereof (or such portions thereof as plaintiff may elect to levy upon) unless the defendant William Pickel shall pay said fee in accordance with the terms of paragraph 5 hereof.  All other costs are ordered taxed against the defendants William and Frederick J. Pickel, for which let execution issue.

" (11)    The court reserves jurisdiction of the parties, and of the subject-matter of this controversy, and leave is given to all the parties hereto, to apply to the court, from time to time, for such further orders as may become necessary or proper to enable the plaintiff to collect the moneys found due and to become due to her by paragraph 1 hereof, including the right to move for a reference to take an accounting of the moneys due from William Pickel and the Pickel Marble & Granite Company, in the event it shall hereafter appear that such accounting is necessary to enable the plaintiff to collect her claim."

The items enumerated in paragraph 1 of the decree as being overdue and payable immediately amount to $1490.90; the valuation of the stocks of Frederick then in controversy amounted, as we have said, to $12,025, exclusive of fifteen shares of capital stock of the St. Anthony Improvement Company, of San Antonio, Texas, then having no present cash value.  The defendant filed his motion to modify the decree which is not set out in this record and which was overruled.  After the motion to set aside the judgment was overruled the defendant appealed from the foregoing decree to this court, where the judgment was affirmed in all things except that portion of paragraph ten of the decree allowing plaintiff an attorney's fee of $500 in the same case. which was reversed. [Pickel v. Pickel, 243 Mo. 641.]

William Pickel on June 12, 1912, in pursuance of the terms of said decree, gave plaintiff his bond, with his wife as surety, in the sum of ten thousand dollars, the obligations and conditions of which were in all respects as prescribed in the decree.

On April 24, 1917, the plaintiff filed in the St. Louis Circuit Court her petition for divorce, which is the case now before us as number 21,146. It alleged the same grounds for divorce as the petition for maintenance (No. 21,147) and pleaded the judgment in that case as an adjudication of abandonment, adding the other grounds set out in that petition, that is to say, (2) habitual drunkenness; (3) such cruel and barbarous treatment as to endanger the life of plaintiff; (4) such indignities as to render her condition intolerable; (5) vagrancy. The specifications supporting these charges are omitted from the record before us.

It is alleged that the defendant has property worth $50,000; that he is second vice-president of the Pickel Marble & Granite Company and has business connection with it and receives a salary therefrom, and is heir expectant of his father to $400,000, and asks for divorce and alimony, and the care, custody and maintenance of the child.

The answer admitted all the allegations of the petition excepting those relating to defendant's property, which were denied.

While the divorce suit was pending and on June 30, 1917, a motion was filed by respondent in the St. Louis Circuit Court upon which the court entered, on April 22, 1918, the following judgment or decretal order. "The court . . . doth find:

"That the defendant is the husband of the plaintiff; that the defendant, without good cause, abandoned the plaintiff and refused and neglected to maintain and provide for her; that the only child of the marriage between plaintiff and defendant is a boy now about twelve years and seven months of age, named Frederick J. Pickel, Jr.; that heretofore, on March 15, 1911, the

circuit court then having jurisdiction of this cause, on plaintiff's petition for that purpose, ordered and adjudicated such support and maintenance to be provided and paid by the defendant for the plaintiff and her child by said marriage as the nature of the case and the circumstances of the parties then appeared to require; that by the terms of said decree, as well as by the terms of the statute (Section 8295) the court reserved jurisdiction from time to time to make such further orders touching the same as shall be just; that thereafter, and on July 24, 1911, Division No. 2 of the Circuit Court of the City of St. Louis, on plaintiff's petition for that purpose, duly made and entered its decree against this defendant, Frederick J. Pickel and his codefendant in that case, William Pickel, whereby it was adjudicated that the said Frederick had transferred to the said William, without consideration, all of his property, and that said transfers were made and executed on the part of both of said defendants with the design and intention of hindering, delaying and defrauding the plaintiff herein of the moneys to become due to her under such orders and judgments of the court as might be rendered in litigation which was then contemplated, and for the purpose of enabling the defendant, Frederick J. Pickel, to escape his legal obligation of taking care of and providing for his wife and child; that as to this plaintiff said transfers were each and all of them fraudulent and void, and that if the defendant, William Pickel, should execute and deliver to plaintiff his bond in the sum of $10,000 conditioned for the payment by him to the plaintiff of all moneys to become due to her thereafter under the said final decree of March 15, 1911, and under such modifications thereof or orders supplemental thereto as might be made from time to time by the court having jurisdiction of the cause, then the plaintiff was enjoined and restrained from suing out any execution to collect said money; that thereafter, and on June 12, 1912, the said William Pickel did give to plaintiff his bond in the sum of $10,000, conditioned that if he should pay her

291 Mo.—13

all moneys to become due to her thereafter under said final decree of March 15, 1911, and under such modifications thereof or orders supplemental thereto as might be made from time to time by the court having jurisdiction of the case wherein the same was entered, then his said obligation should be void, otherwise to remain in full force and effect; that upon the giving of said bond plaintiff, by the terms of said decree of July 24, 1911, became and was enjoined and restrained from suing out any execution or executions to collect the money due her under said decree of March 15, 1911, so long as the said William Pickel should continue to pay the same; that thereafter, and in April, 1917, the plaintiff sued the defendant for divorce, and said cause was tried and submitted in this court (Judge Cave presiding); that upon such submission the defendant contended that the obligation of William Pickel's said bond covered only moneys due or to become due to the plaintiff in this case, and did not extend to include any alimony that might be awarded to her in said divorce case, and that a decree of divorce would have the effect of merging and destroying the decree in this case, and of thereby extinguishing the liability of William Pickel on said bond; that thereupon this court, in the interest of justice, set aside the submission of the divorce case and gave the plaintiff leave to file her motion in this case for a modification of said final decree of March 15, 1911, or for an order supplemental thereto, to the end that said William Pickel's liability on said bond might be preserved; that the plaintiff claims that the liability of said William Pickel on said bond constitutes an equitable asset of the defendant which is available for her benefit to the full extent of $10,000; that the court in this case cannot pass upon the merit of said contention for the reason that William Pickel is not a party hereto; but the court finds that the nature of this case and the circumstances of the parties require this court now to make a further order touching the support and maintenance to be provided and paid by the defendant for the plaintiff and for her

said child, and that it is just that said further order should award the plaintiff maintenance and support in gross in the sum of $10,000.

"It is therefore considered, adjudged, and decreed by the court that the said decree of March 15, 1911, herein be and the same is hereby modified and supplemented, and the defendant is hereby ordered, adjudged, and decreed to pay to the plaintiff the sum of $10,000 for the support and maintenance of herself and her said child, for which let execution issue.

"The court reserves to itself and retains jurisdiction of the subject-matter of and parties to this cause of action, and leave is granted to each of the parties hereto to apply to the court, from time to time, for such supplemental orders, and for the due and proper enforcement thereof, as may be necessary or proper to fully protect the rights of the parties hereto, the jurisdiction thus reserved and the leave thus granted to continue until the further order of the court.

"The court also reserves to itself and retains jurisdiction of the subject-matter and of the parties for the purpose of fixing the compensation to which the plaintiff's attorney is or may be entitled, and for providing for the payment and collection thereof. The costs of this proceeding are taxed against the defendant."

This is the judgment or order appealed from in number 21,147.

Afterwards and on the same day, April 22, 1918, the court entered final judgment in the divorce case, which, after reciting the abandonment by the husband and innocence of the wife and other formal recitals, as well as the supplemental order for maintenance above recited and adopting the same, and that justice required that the ten thousand dollars awarded therein should not be merged in or extinguished by the divorce decree, but should be confirmed and protected so that plaintiff may pursue whatever remedy she may have on the bond of William Pickel, proceeds thus:

"It is therefore considered, adjudged, and decreed by the court that the plaintiff be and she is hereby absolutely and forever divorced from her bonds of matrimony existing between her and the defendant, and that she be restored to all the rights and privileges of an unmarried person, and that the plaintiff have and recover of the defendant as alimony and maintenance in gross the same sum of $10,000 awarded her as maintenance in gross by said supplemental order of even date herewith in said maintenance case, said sum of $10,000 to be collected, however, by process in said maintenance case, and no execution to be awarded plaintiff herein except on special order of the court; that this award so made shall not operate as any merger, extinguishment, or impairment of said award of $10,000 in said maintenance case, but on the contrary is intended merely to recognize and preserve the same, and this decree shall be without any prejudice whatever to the rights of the plaintiff to collect said award by process in said maintenance case.

"It is further considered, adjudged and decreed by the court that the defendant have the care and custody of said child Frederick J. Pickel, Jr., during the school term, but with right in the plaintiff to visit said child at all reasonable times, and to have said child visit her at reasonable times out of school hours, and to have the custody of said child during the summer vacation, and for a period beginning five days after the close of whatever school the child may attend at or near the beginning of summer, and until a period beginning five days before the opening of whatever school the child is to attend in the fall.

"The court reserves jurisdiction of the parties for the purpose of making such alteration, from time to time, as to the allowance of alimony and maintenance as may be proper, and for the further purpose of making such alteration touching the care, custody and maintenance of the said child as the circumstances of the parties and the nature of the case may from time to

time require, and leave is granted to each of the parties hereto to apply to the court, from time to time, for such supplemental orders, and for the due and proper enforcement thereof, as may be necessary or proper to fully protect the rights of the parties and of the child, the jurisdiction thus reserved and the leave thus granted to continue until the further order of the court.''

This is the decree appealed from in case number 21,146.

At the hearing of the divorce case, the plaintiff offered to prove, in support of her allegation that the defendant was worth $50,000, that the stock described in the pleadings and decree in the sequestration proceeding was worth $70,000, which offer was excluded by the court.

There was evidence tending to show that defendant's father was worth $2,000,000, and that the fortune of his mother, who signed the ten-thousand-dollar bond given in the sequestration proceeding, was still greater. Neither of these testified during these proceedings so far as is shown by the record.

I.  While the judicial proceedings by which this litigation is now for the seventh time in its appellate stage are many and complicated, they all relate to a single question, bifurcated in the two judgments from which these appeals are prosecuted. No question is raised as to either the validity or regularity of the divorce decreed in one of them, or of the right to maintenance, which was the original subject of the other.

By his answer in the divorce case the defendant not only admits the abandonment of his wife and child, but also admits definitely and expressly that at the time he was an habitual drunkard and a vagrant, and was guilty of indignities which rendered her condition intolerable and of cruelties which endangered her life. He concedes the right of plaintiff to a divorce, and vigorously pleading his poverty, casts himself upon the merciful consideration of the court for protection against a money

judgment.   He insists that by the divorce he has been released from all obligation to contribute to the support of his former wife and his child.

We have carefully read the two final orders or decrees of the trial court from which these appeals are taken, and can fully understand what was in the mind of the court in their entry, and it is this evident purpose to which we shall give attention with a view to determining the jurisdiction of the court in giving effect to that purpose in either or both these cases.

That the defendant abandoned his wife and infant child in 1910 has been often adjudicated between them— once at least by this court in Pickel v. Pickel, 243 Mo. 641.   It was also adjudicated by us in the same case that immediately after the abandonment he transferred all his property, consisting of stocks worth $12,- 025, and other stock then having no market value, to his father, in pursuance of a fraudulent arrangement between them to hinder and delay plaintiff from the collection of any judgments she might obtain against him by reason of such abandonment.

In the whole judicial history of this transaction we find no hint of any excuse on the part, either of himself or his father, for these acts, unless the simple desire to shake off the burden of the wife and infant child can be so denominated.   Upon the separation she went to her mother in Chicago for shelter.   The family there seems to have been working people, as the evidence incidentally states that one of her two sisters was employed as a stenographer.   As soon as she was out of the State, the defendant brought suit in St. Louis for divorce, but on her appearance by counsel dismissed it.   She then instituated the proceeding for separate maintenance now before us in one of these appeals.

The original decree in this case allowed the plaintiff, in addition to certain suit money, $100 per month for the separate support and maintenance of herself and child from the date of this entry.   It also included an award for the same purpose made by certain interlocu-

tory orders in the same case, amounting to $160, and
certain sums for expense in the same proceeding, all of
which are fully set out in our statement.  Execution hav-
ing been issued upon her judgment for costs and ex-
pense in his divorce suit, as well as for amounts and in-
stallments due upon the decree for maintenance, and
these executions having been returned unsatisfied, a suit
in equity was instituted to sequester the stocks which he
had fraudulently transferred to his father for the fraud-
ulent purpose of defeating a recovery against her hus-
band in any proceeding she might institute to enforce her
marital rights with respect both to herself and the
child.  In that case both father and son were of course
defendants, and it is the same case which was decided
by this court at the April term, 1912, and which we have
already cited.  The divorce case now before us was not
instituted until five years afterward.  With this in mind
we will try to examine the force and effect of the final
decree in the sequestration suit, which, although aux-
iliary to the remedies sought, was an independent suit
having for its object the divestiture of the father's title
to the securities.

That the decree of sequestration, as it came to this
court for review and received the sanction of our affirm-
ance, was intended to liquidate the value of those se-
curities for all the purposes of that case is evident from
its perusal.  The amount of cash which the father was
required to pay before giving his bond was $1490.  This
added to the amount of the bond made $11,490.  The
value of the stocks was assumed to be $12,025, so that
the amount charged against him by the decree lacked
$535 of the value of the property in his hands adjudicated
to belong to the son.  This difference is practically ac-
counted for by the $500 allowed her as her attorney's
fee in that suit, which was reversed by this court, al-
though evidently considered by the trial court in fixing
the amount of the bond, which did not include it.  This
view is strengthened by the fact that the same decree
provides, in substance, that, upon the filing and approval

of the bond, the existing injunction theretofore granted against the disposition of the property by the fraudulent assignee shall be dissolved automatically, so that his possession of the certificates would give him all the rights and incidents of absolute ownership.

This decree was, however, *in rem.* Its effect was limited to the property only, and had no effect as imposing any liability against the father otherwise than as compensation for its fraudulent taking, and its retention under the terms of the decree. It in no way affected the ownership of the stock as between himself and his son. It bound him to pay the monthly maintenance already adjudicated by the court and to respond in like manner to "any modification thereof or orders supplemental thereto" to the extent of the penalty of the bond.

In that decree the court reserved jurisdiction, and gave leave for all parties to apply to the court from time to time for such further orders as should be necessary or proper to enable the plaintiff to collect her claim, including the right to a reference and accounting for that purpose. This evidently refers to an accounting of moneys due from William Pickel under this bond.

II.   It will be noted that the decree was carefully framed to express the determination of the court that the bond should cover only that part of the valuation of the stock represented by the deferred monthly payments. The time when these payments should be completed was fixed as accurately by the terms of the decree as if the year, month and day had been stated in terms. That time had not yet arrived, when, in the exercise of the jurisdiction it had reserved for that purpose over the subject-matter and parties, including the father, in each proceeding, and in contemplation of a decree of divorce *a vinculo* of the parties in a suit for divorce and alimony then pending in the same court, the court modified its decree in the maintenance proceeding by a sup-

plemental order which has been called in this record an allowance of alimony in gross; but the only effect or meaning of which was to make the unmatured monthly payments called for in the bond due and payable at once.

It does not appear in the record whether the plaintiff had, in the maintenance of herself and child, contracted any obligations or made expenditures in excess of the hundred dollars per month paid her by the obligor, but she complains in her petition that since the giving of the bond the cost of living has increased more than fifty per cent and the needs of plaintiff and her son have grown in proportion, so that $100 per month was then inadequate to their support, and this is admitted by the answer, and the court might well take judicial notice of the fact, if necessary.

This supplemental order, made in contemplation of the entry of the decree of divorce entered afterwards and on the same day, is the only matter of contention in this appeal of the maintenance case. The jurisdiction of the court over the persons of the parties as reserved in the original decree is not questioned, but it is denied that the jurisdiction extended to the order actually made, because it makes some of the same payments that were originally to be paid monthly in the future payable immediately and that, by the terms of Section 8295 and following, no such jurisdiction is conferred. This is upon the theory that the remedy of "maintenance" is exclusively applicable to maintenance of a married woman and her minor children during the existence of the marriage, and for that reason is materially different from the "maintenance" authorized by the statute relating to divorce in Sections 2371 and 2372, which presupposes the dissolution of the marriage relation, or the pendency of a suit in behalf of the wife for that purpose, although the word "maintenance" is used indiscriminately in each to designate the pecuniary relief to which the complaining wife is entitled in behalf of herself and her children, and the same drastic remedies, including sequestration of property, is given in

each. [Sec. 2375.] While we do not think it necessary to determine in this appeal, whether, in a proceeding under Section 8295 alimony in gross, that is to say, alimony undistributed over definite periods, as from month to month or from year to year, may be adjudicated, the relevancy of these two statutory remedies to each other will more fully appear as we proceed.

III. Following our opinion in the sequestration case, we hold that the stocks there in issue were worth at least $12,025; and that they had been transferred by this defendant for the purpose of defrauding his wife of anything she might recover in any future suit or suits which she might bring to enforce her husband's liability for wrongs which he had therefore committed against her with respect to her marital rights. We also hold that by its decree in that case the court intended to substitute the bond of William Pickel and wife for $10,000, together with $1490 in cash in payment of sums already accrued under the maintenance decree, and $500 to be paid by him as attorney's fee in said suit, for the stocks in kind which the said William Pickel, upon payment of all said sums of money and the execution of said bond, would be permitted to retain. This construction not only accords perfectly with the terms of the decree, but is necessary to avoid the absurdity that the court intended to divide the fruits of the fraud between the fraud-feasor and his innocent victim. The holding of this court that the trial court was without jurisdiction to adjudge an attorney's fee in an independent action in equity to subject property fraudulently transferred by the debtor in a judgment at law created a slight discrepancy in these figures, which we are not now called upon to consider otherwise than to say that the payment of this fee, if it was paid by either of the Pickels, could have no effect to reduce the amount payable by the terms of the bond, which included only the amount of the monthly payments of $100 beginning with the fourth payment.

That this bond is an asset of the husband, to the extent of the full amount thereof remaining unpaid, is evident. It represents property of the defendant fraudulently transferred by the husband to escape liability for the payment of any demand his wife might establish against him growing out of his wrongful act which constitutes alike the foundation of her claim for separate maintenance and for divorce. Although it was given directly to the wife, it is in the custody of the court which, by the terms of the judgment under which it was executed, as well as by the express terms of the statute which authorized it (R. S. 1909, sec. 8295), may, ''from time to time, make such further orders touching the same as shall be just.'' When the divorce from the bonds of matrimony was granted, we will assume that the judgment for maintenance became *functus officio,* but the bond still remained in court unsatisfied unless it had been satisfied by force of the decree, which we will presently consider.

IV. Much has been·said in this class of proceedings in our courts as to whether such proceedings were at law or in equity. This subject cannot well be divorced from the provisions of Section 1727, Revised Statutes 1909, which declares that ''there shall be in this State but one form of action for the enforcement or protection of private rights, and redress or prevention of private wrongs.'' The distinction between law and equity does not, nor can it, lie in the form of the action, whatever that form may be, but must lie in the nature of the remedy sought, and wherever the statute authorizes equitable relief as an incident to the ultimate right, the action is, to that extent, equitable. Our own statutes of 1825 (Sec. 3, p. 329) expressly provided that such cases be tried by the circuit courts sitting as courts of chancery, which should, in that capacity, have ·jurisdiction· in all cases of divorce and alimony *or maintenance.* This declaration as to the equitable nature of the jurisdiction was repeated in the Revision of 1845. This was most natural,

as, so far as our jurisdiction is derivative, it has come down to us from the English ecclesiastical courts, the jurisdiction of which extended over the marital relation, and not through the common law. These statutes gave such courts authority in that capacity, to enforce the performance of their decrees and orders by execution, sequestration of property or other lawful ways and means as is usual and in accordance with the practice of the court. Such remedies as compulsory security and sequestration originated in equity, because the powers of the courts of common law were not adequate to the relief indicated in such cases.

The thoughts we have just expressed are not merely theoretical or academic, but they go to the very foundation of the question before us. The process of sequestration which has, from the very beginning of the judicial system of the State, been incorporated in these proceedings, is full of meaning. It is true that where property sought to be brought into court and subjected to its custody and disposition is in the possession or under the control of one not a party to the principal proceeding the process for that purpose by which he is brought in is, to that extent, an independent suit, but when the property is already in court or in possession of the complainant, such process is often unnecessary, and the court will appropriate it to the purposes of the suit, as justice and equity may require.

V. Applying the principles we have stated to the question before us we find that the Legislature has from the beginning made the *maintenance* of the wife as distinguished from *alimony* an element of the relief granted in divorce cases. It is curious to note that the Act of May 13, 1807 (1 Ter. Laws, p. 90), provides, under the general title of divorce, for divorces from bed and board as well as from the bonds of matrimony. Although in addition to the ecclesiastical grounds for divorce from the bonds of matrimony it added wilful and malicious desertion for the space of four years, it provided for

divorce from bed and board with *maintenance* for wilful and malicious abandonment or turning the wife out of doors, without reference to the continuance of that condition. The Act of January 7, 1825, to which we have already referred, authorized a divorce from the bonds of matrimony for abandonment for the space of two years, and that where a husband should abandon his wife or separate himself from her and refuse or neglect to maintain or provide for her it should be lawful for the court to decree suitable *maintenance* for herself and their children.

It appears therefore, that the legislative abolition of divorce from bed and board, left, surviving it one of its incidents, the right to separate maintenance. This action accomplishes all the purposes of the divorce from bed and board without bearing its name. The Act of 1807 gave the parties their choice in all cases to take a decree of divorce from bed and board, with maintenance, instead of a divorce *a vinculo* to which they might, upon the facts be entitled, so now the abandoned wife may sue for maintenance in lieu of the absolute divorce to which the same abandonment might entitle her.

The bond in question as we have already said stands in lieu of the property out of which the plaintiff was entitled to make whatever sum might be decreed to her as alimony upon the entry of the decree of divorce. It represents the property of the defendant, in possession and under the control of the court. The statutory power of sequestration in aid of its decree confers the right to apply it to that purpose, for it is plain that execution would not reach it. Its value has already been liquidated and it is, in effect the price which defendant voluntarily paid to the court as the value of the property to which plaintiff was entitled in satisfaction of any claim she might establish against the defendant by reason of the violation of her marital rights. In determining the amount of defendant's liability the obligor in the bond had no voice. Nor had he any voice in determining the form in which he should be required to make the pay-

ments nominated in his bond whether as alimony or maintenance.

We have carefully examined both these judgments, and hold that they express with sufficient certainty the result of the conclusions we have herein stated. We are also of the opinion that the jurisdiction reserved in these cases amply secures to either party to this suit and to the obligor in the bond the right to an accounting for the purpose of ascertaining the amount due thereon and to make all necessary orders to execute these judgments according to their true intent and meaning as herein expressed.

It is therefore ordered and adjudged that the said judgments be and they are now affirmed. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, David E. Blair,* and *Elder, JJ.,* who dissent.