JOSEPH W. STEELE v. THOMAS L. REID et ux., Appellants.

Division One, July 19, 1920.

1. **FRAUDULENT CONVEYANCE: Foreign Homestead: For Another's Benefit.** The exchange of a Kansas homestead, exempt from execution, in part payment for Missouri property, deeded to the homesteader's wife, does not render the Missouri property immune from liability for his debts, if he was the real owner and she only the holder of the title for him; for the immunity of the Missouri property, acquired subsequent to a debt owing by him, from liability for that debt, depends on whether, in truth, she was not only the holder of the legal title, but held it for her own benefit. and not for his, and that question, in turn, depends on the good faith of the transaction between them.

2. ———: ———: ———: **Antecedent Debt.** The fact that the homestead in another state was not subject to execution for the homesteader's debts under the laws of that State, will not save a Missouri homestead, for which the foreign homestead was exchanged, from execution to pay his antecedent debt; and where in the exchange of the two properties the Missouri property was deeded to the homesteader's wife, as the foreign homestead had been, the

question still remains whether the foreign homestead was put in the wife's name in order to constitute her the real and beneficial owner, or whether the conveyance to her was colorable and made with the purpose and understanding that he should continue the beneficial owner, and with such an arrangement in force the property was traded for Missouri property and the title taken in her name with the same understanding and purpose. If the conveyance to her was only colorable, and he paid for and became the real owner of the Missouri property, and the title was put in her name only to prevent his creditors from collecting debts he owed, the property is liable to execution to pay his debts existing at the time it was acquired.

3. ———: Creditor's Bill: No Execution. Ordinarily, before a creditor's bill can be maintained by a judgment creditor, he must show he had exhausted his remedy at law by taking out an execution on his judgment and that it had been returned unsatisfied because of lack of property whereon to levy; but an exception is allowed to the rule, upon proof that it would have been useless to issue execution because the debtor owned nothing that could be reached by it; and where the evidence shows that the defendant debtor owned nothing in his own name, except some land in another state, the creditor's bill to have a conveyance made to his wife declared to be in fraud of his creditors and to subject it to the payment of his judgment debt, will be entertained.

4. ———: Judgment Lien: After Three Years. A judgment creditor is entitled to execution and levy on the defendant's property at any time within ten years, and a purchase of property more than three years after the date of the judgment does not bar the right of the creditor to have the conveyance to defendant's wife set aside as made to her to defraud the plaintiff and the property subjected to the payment of the judgment.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney*, Judge.

AFFIRMED.

*James A. Kemper* for appellants.

(1)    The Osage City Hotel property was the homestead of T. L. Reid and family, on and prior to the 1st day of March, 1915, and as such was free from the judgment lien and exempt from the levy of execution in favor

of any judgment creditor within or without said juris-
diction. It was property in which creditors had no in-
terest whatever, which the law could not touch, limit or
restrain, and the owner, T. L. Reid, could alienate the
same by gift or by sale, at will. Winter v. Ritchie, 57
Kan. 212; Roser v. Bank, 56 Kan. 129; Wilson v.
Taylor, 49 Kan. 774; Hixon v. George, 18 Kan. 253;
National Bank v. Kopplin 42·Pac. 263; Reed v. Nichol-
son, 186 Mo. 404; Pocoke v. Peterson, 256 Mo. 501; Balz
v. Nelson, 171 Mo. 690; Rose v. Smith, 167 Mo. 86. (2)
Being the owner of the fee of said hotel property, Mae N.
Reid had absolute and unrestricted authority to alienate
the same without regard to the rights of any creditors of
T. L. Reid; and if the Osage City Hotel property be-
came the property of Mae N. Reid, the transaction by
which it was conveyed to her by T. L. Reid was not fraud-
ulent, and Mae N. Reid, could alienate the same. Winter
v. Ritchie, 57 Kan. 212; Roser v. Bank, 56 Kan. 129;
Wilson v. Taylor, 49 Kan. 774; Hixon v. George, 18 Kan.
253; National Bank v. Kopplin, 52 Pac. 263; Reed
v. Nicholson, 186 Mo. 404; Pocoke v. Peterson, 256 Mo.
501; Balz v. Nelson, 171 Mo. 690; Rose v. Smith, 167
Mo. 86. (3) Being the owner of the fee to said property,
free from fraud, Mae N. Reid was fully authorized to
exchange the same for the Haddon Hall property in Kan-
sas City, and it is immaterial that the transaction of
exchange was in part conducted by T. L. Reid, as her
agent, any more than had she been represented by an
outside and wholly theretofore disinterested party. Reed
v. Nicholson, 189 Mo. 396. (4) Haddon Hall, being the
property of Mae N. Reid, is in no way liable for the debts
of T. L. Reid contracted before Mae N. Reid acquired
said property, any more than would property acquired
by her at said time in which T. L. Reid had never had
any interest whatever be liable for said debts. Reed v.
Nicholson, 189 Mo. 396; Bebb v. Crowe, 18 Pac. 225;
Hoffman v. Hill, 28 Pac. 624; Rush v. Gordon, 16 Pac.
700. (5) Had the title of the Kansas homestead rested
in T. L. Reid, upon exchanging the same for property in

Missouri taking the title in the wife, would not be in fraud of creditors, and the same could be held by the holder of the title thereof free from levy and sale for prior existing debts of the owner of the Kansas home-stead property. Stinde v. Behrens, 81 Mo. 254. (6) Respondent cannot maintain this action and cannot re-cover for the reason that it is not pleaded and the evidence fails to show that an execution had been issued upon plaintiff's judgment and returned unsatisfied; but it affirmatively appears from the evidence that such was not done. Brown v. McKown, 265 Mo. 320. (7) Judgment ceased to be a lien at the expiration of three years after the same was obtained and respondent has no such interest in Haddon Hall—having no judgment lien against the same. Kegan v. Haslett, 128 Mo. App. 293; Larimore v. Tyler, 88 Mo. 661; Sublett v. Railroad Co., 96 Mo. App. 113; McLaughlin v. McLaughlin, 16 Mo. 242.

*Walter W. Calvin* for respondent.

(1) The testimony established the fact that Thos. L. Reid was, for a long time prior to the trial of this cause, as well as at the time of the trial, insolvent; and appellants' contention that an execution should have been issued upon the judgment in question, as a condition precedent to the maintaining of this action, must be ruled against them. Sec. 2133, R. S. 1909; Zoll v. Soper, 75 Mo. 460; Davidson v. Dockery, 179 Mo. 687; St. Francis Mill Co. v. Sugg, 169 Mo. 130; Klauber v. Schloss, 198 Mo. 502; Wilson v. Salisbury, 167 Mo. App. 191; Commercial State Bank v. Ankrum, 191 Mo. App. 251. (2) Neither was respondent required to institute an action in a court of equity to have the conveyance in question set aside as a consummated fraud. He also had the right, and as he did, to institute an action to set aside the conveyance in question as fraudulent as to him, or to the extent of his judgment; which, being done, he could thereupon have execution issued upon his judgment, and the realty sold to satisfy the same. Spindl,

v. Hyde, 247 Mo. 32. (3) A new homestead, acquired with the proceeds derived from the sale of an old one, refers wholly and exclusively to Missouri homesteads; and, the law does not permit one to sell a homestead in another State and with the proceeds derived therefrom acquire a homestead in this State, with the result that exemption rights would attach to the latter. Sec. 6712, R. S. 1909; Bank v. Dougherty, 167 Mo. 1; Kennedy's Admr. v. Duncan, 157 Mo. App. 212. (4) The record is replete with testimony justifying' the conclusion of the court that the conveyance in question was a fraudulent one. Moreover, fraud need not be proved by direct testimony; and, in transactions between husband and wife, slight evidence thereof is sufficient. Sec. 2881, R. S. 1909; St. Francis Mill Co. v. Sugg, 206 Mo. 155; First Natl. Bank v. Fry, 216 Mo. 42. At least a portion of the consideration for the conveyance of the Everest Hotel by Thos. L. Reid, to Mae N. Reid, being fictitious, rendered even that conveyance voidable at the instance of respondent. Klauber v. Schloss, 198 Mo. 502; Bates County Bank v. Gailey, 177 Mo. 181; State ex rel. Robinson v. Hope, 102 Mo. 410. (5) In any event the conveyance of Haddon Hall to Mae N. Reid had the effect of hindering and delaying the creditors of Thos. L. Reid; and for that reason that conveyance must be regarded as fraudulent. Kurtz v. Troll, 86 Mo. App. 649; McCollum v. Grain, 101 Mo. App. 522; Kurtz v. Troll, 175 Mo. 506; Klauber v. Schloss, 198 Mo. 502.

GOODE, J. —This plaintiff, on February 20, 1912, recovered a judgment in the Circuit Court of Jackson County, Missouri, against Thomas L. Reid for the sum of five hundred dollars, and the judgment bore interest from that date at the rate of six per cent per annum. The present action was brought against said Thomas L. Reid and his wife, Mae N. Reid, to set aside a conveyance executed December 30, 1916, by James T. Broughal and his wife, Annie L. Broughal, which conveyed

284 Mo.—18

to defendant Mae N. Reid Lots 1 and 2 (except that part taken for streets) in Roseland, an addition to Kansas City, Missouri, and subject said premises to the levy of an execution issued to collect plaintiff's said judgment. On the lots is a large three-story building called Haddon Hall, and used for an apartment house where the tenants are given meals. The relief plaintiff seeks is asked upon allegations that the conveyance of the property to Mae N. Reid was for a consideration paid entirely by Thomas L. Reid, who had the title put in her name, for the purpose of delaying and defrauding his creditors, including the plaintiff, and that Mae N. Reid was cognizant of the facts and participated in that purpose. The answer admits plaintiff obtained a judgment against T. L. Reid as alleged in the petition, and that the judgment bore interest from its date; denying all other allegations. For further defense the answer stated that on December 18, 1916, (the date when the contract for the purchase of the aforesaid premises from Broughal and wife was made), and for years prior thereto, the defendants were husband and wife and resided in Osage City, Kansas, where they owned and occupied as a homestead, Lots 1, 3, 5, 7, 9, 11, 13 and 15, in Block 4, of Dodd & Boyds' Addition to Osage City, and improvements thereon; that those lots comprised less than one acre and as the homestead of defendants the premises "were free from the lien of any judgment and exempt from liability for any indebtedness due from the said T. L. Reid, under Section 3440, Revised Statutes 1909, of the State of Kansas;" that while the said lots were occupied by defendants as a homestead, and on March 1, 1915, defendant T. L. Reid conveyed them for a valuable consideration to Mae N. Reid; that on December 18, 1916, Mae N. Reid negotiated with James T. Broughal and Annie L. Broughal an exchange of the aforesaid homestead for Lots 1 and 2 (except that part taken for streets) in Roseland Addition to Kansas City, Missouri; that the negotiation terminated December 30, 1916, in the aforesaid deed of that date made by James T. Broughal and his wife, con-

veying to Mae N. Reid said Lots 1 and 2 in Roseland
Addition to Kansas City; that in said transaction Mae
N. Reid acted in good faith, without intention to defraud.
Plaintiff joined issue as to the new matter in the answer
by a replication in the form of a general denial.

The court below found the conveyance of the Brough-
als of said lots in Roseland Addition was made to Mrs.
Reid for the purpose of hindering, delaying and defraud-
ing the creditors, including plaintiff, of T. L. Reid; that
the conveyance rendered T. L. Reid insolvent; that the
real estate mentioned in it was the property of defendant
T. L. Reid, subject to incumbrances existing thereon
prior to the date of the conveyance to Mae N. Reid, and
in equity and good conscience his interest should be
subjected to the payment of plaintiff's judgment.   It
was accordingly considered and adjudged that said deed
be set aside and for naught held against the plaintiff;
that unless T. L. Reid should within ten days from the
date of the decree to set the deed aside, satisfy plain-
tiff's judgment against him, which then amounted to
$682.23, together with the costs of the action, the prem-
ises should be sold by the sheriff, subject to the in-
cumbrances of record and that execution should issue
accordingly.

From that decree the present appeal was prosecuted.

Defendant T. L. Reid, for seven or eight years,
possibly longer, previous to 1916, had been engaged in
trading for hotels at different places, conducting them
for a time, then exchanging them for farm lands or for
other town property.   During that period he owned
hotels in the towns of Anthony, Yates Center and Osage
City, Kansas, and in the towns of Fulton, Mexico and
Kansas City, Missouri.   He owned the Dykington Inn
in Kansas City and traded it for land in Chariton
County, Missouri; owned the New Palace Hotel in Ful-
ton, which he exchanged for from six to eight hundred
acres of land in Vernon County, valued by him at $60 an
acre, and incumbered for about $8,000. As to the quantity

of this tract of land, the testimony of plaintiff is contrary to that of the agent who made the exchange; for plaintiff says there were six hundred and the agent that there were eight hundred acres; at any rate it was priced at $48,000. The Palace Hotel in the trade was valued at $42,000. This land was afterwards exchanged for property in Kansas City called the Flourdell Flats. The defendant testified there was a mortgage on the flats which was foreclosed, thereby cutting off his equity of redemption; and he says in those trades he lost $30,000, about all he had, except two sections of land thirty-five miles from San Antonio, Texas, and of their value he declared he had no opinion. Some time during the years mentioned, he owned the Woodson Hotel at Yates Center, Kansas, conducted it for a while and then exchanged it for a ranch in the vicinity of Yates Center, where his first wife owned a residence. After disposing of the hotel in that town for the ranch, he acquired the Everett Hotel premises and furniture in Osage City, which hotel stood on the aforesaid Lots 1, 3, 5, 7, 9, 11, 13 and 15 in Block 4, in said Osage City, the premises alleged in the answer to have been exempt from execution for debts of defendant T. L. Reid, and which were exchanged for the property in Roseland Addition to Kansas City, known as Haddon Hall. The facts we have related are only relevant to the present case as tending to prove Mr. Reid had possessed considerable means shortly before the Haddon Hall property was acquired, and the inference may be drawn that part of his means went into the consideration for' said property. The title to the lots in Osage City was conveyed to T. L. Reid, January 12, 1911, but that deed was not recorded until February 24, 1915; Reid said, because it was in escrow until he paid the purchase money; but in fact there was a mortgage still on the property when he traded it for Haddon Hall. Although the title was taken in his name, he testified most of the purchase price of the Osage City premises was paid by his first wife out of the proceeds of the

residence she owned in Yates Center and some insurance money that came to her or to him from insurance on her life. This matter was indefinitely stated. He spoke of having paid something himself on the Osage City property with money he "got around," and again of contributing to the price from the proceeds of notes he held and collected. Just how much he contributed his testimony left uncertain. A week after the deed of the Osage City premises to Reid had been filed for record, he conveyed the property, including the furniture in the hotel, to his present wife Mae N. Reid, whom he married November 25, 1912, his first wife having died about a year before that date. Just prior to said conveyance plaintiff was endeavoring to collect his judgment; was trying to force or induce Reid to pay it. The consideration mentioned in the deed from T. L. Reid to Mae N. Reid was nine thousand dollars; yet the testimony of both of them shows that at most she did not pay more than $3500. Explaining why this conveyance was made, the two defendants said T. L. Reid owed a bank $2800, which was secured by a mortgage on the furniture in the hotel; that there was an incumbrance on the real estate of about $3000; that the bank was pressing Reid on these debts and Mrs. Reid was willing to come to his relief if the hotel premises and furniture were transferred to her; that Reid transferred the title to her to get help and she advanced the money to pay the debts for which he was being pressed. According to Mrs. Reid's testimony the Osage City property at the time the conveyance was made to her, was worth $19,000, including the value of the furniture.

Mrs. Reid, who had resided in Kansas City, wished to return there; so Mr. Reid began a correspondence with George Haslam, a real estate agent in Kansas City, with the view to having Haslam effect a trade or sale of the hotel and premises in Osage City. This correspondence ran from October 9, 1916, to December 30, 1916, the date of the exchange of the Osage City premises for Haddon

Hall, in Kansas City. Haslam brought about the transaction with the Broughals, and in the exchange of properties between them and the defendants, the Haddon Hall premises were valued at $75,000, the Osage City property was accepted as part of the price, the Broughals assuming the incumbrance of $3900 on the lots and hotel, and a chattel mortgage on the furniture of $2500, or $6400 in all. The Reids assumed a mortgage of $20,000 on Haddon Hall and one of $2500 on the furniture therein, and agreed to give the Broughals a second deed of trust on the premises for $25,000, payable in stated installments. In the transaction between Haslam and T. L. Reid, nothing was said about Mrs. Reid being the owner of the property in Osage City; but before the transaction was closed, Mrs. Reid inspected Haddon Hall, the terms of the deal were submitted to her, and she was a party to the preliminary contract entered into December 18, 1916, which was followed by the deed made to her on December 30, 1916. Reid conducted the hotel in Osage City in his own name, had taken out the license in his own name, and after the exchange he managed Haddon Hall the same way; but he deposited the money taken in partly in one bank in the name of his wife, and partly in another bank in the name of his daughter. This daughter was the child of his first wife, and the testimony inclines to show Reid wanted the title taken in a way to protect what he considered to be his daughter's interest, on account of her mother having invested in the Osage City property the proceeds of the residence in Yates Center and the insurance money; wherefore he thought the daughter had inherited an interest in the Kansas property which entered into the consideration for the Haddon Hall premises. It seems Reid wanted the title to those premises to be placed in his wife and daughter, but yielded to advice to put it in the name of his wife only. He testified vaguely as to an understanding with his wife to protect his daughter's interest and to a writing having been signed by Mrs. Reid for that purpose.

I. The principal defense relied on is that the Everett Hotel premises in Osage City, Kansas, conveyed by Reid to his wife on March 1, 1915, was a homestead and as such exempt generally from liability for the debts of Reid, and, therefore, the convey-ance could not be in fraud of plaintiff as a judgment creditor. Further, that said property being exempt from liability to his creditors when Reid conveyed to his wife; after it was exchanged for the Haddon Hall premises in Kansas City, the latter property enjoyed the like ex-emption.

Homestead.

The statute of Kansas appealed to in support of this defense, reads as follows:

"A homestead to the extent of one hundred and sixty acres of farming land, or one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improve-ments on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations con-tracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* The pro-visions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife." [R. S. Kan. 1909, sec. 3646; erroneously cited in the answer as Sec. 3640.]

The plaintiff does not controvert the proposition that the Kansas hotel property was Reid's homestead, and as such exempt, under the cited statute, from the levy of execution for plaintiff's judgment. Construing that statute the courts of Kansas of appellate jurisdiction, have repeatedly held a debtor can work no fraud on his creditors by disposing of his homestead, for the reason that it is not subject to execution for their debts. Dis-cussing the question in Hixon v. George, the Supreme Court of Kansas said that if George, a debtor, had owned

any interest in the property there in controversy, he would have had the power, with the consent of his wife, to transfer his interest to any person he chose and for any consideration, or none, and no creditor would have the right to complain; that such a transfer would not have been a fraud upon the rights of the plaintiffs, for "a debtor cannot commit a fraud upon his creditor by disposing of property 'toward which the eye of the creditor need never be turned.'" [18 Kan. 253, 260.] In another case, in passing upon the exclusion of evidence to show a homestead had been conveyed with the intent to prevent the collection of a judgment, the court ruled the evidence was immaterial, because if the land was the debtor's homestead, he might deal with it as he pleased, regardless of his creditors. [Wilson v. Taylor, 49 Kan. 774.] And it was held, in a case where a judgment debtor who owned a homestead and desiring to change his place of residence, had traded said homestead for an incumbered tract of land, intending to occupy the land only until he could dispose of it and with the proceeds buy a home in another town, this tract of land was exempt from the levy of an execution to collect a judgment against the debtor, because the land was traded for as an incident in the process of acquiring a new homestead. The court said: "No liens attached to the homestead which was traded for the land, and the exchange and the loan were all parts of a transaction designed to transfer the home from Eureka to Fort Scott or Wichita, . . . It is well settled that one homestead may be exchanged for another free from any claim of creditors upon either. A debtor cannot commit a fraud upon his creditor by disposing of his homestead." [Winter v. Ritchie, 57 Kan. 212, 214.]

In view of those decisions and others like them, decided by the Kansas courts of review, the transfer by Reid of the title to the Osage City premises and the furniture in the Everett Hotel, situated on them, to his wife on March 1, 1915, was a valid transfer and not in

fraud of plaintiff, no matter what the purpose of the parties was; because, if the transfer was merely colorable and Reid remained the real owner, the homestead was exempt, in his hands, from liability for his debts.

But although the Kansas homestead was traded in as part of the price of the Haddon Hall premises in Missouri, the same rule does not govern in respect of the immunity of said premises from liability for Reid's debts, if he was the real owner and Mrs. Reid only the holder of the title for him. The immunity of the premises acquired in this State subsequent to the debt Reid owed the plaintiff, from liability for that debt, depends on whether, in truth, Mrs. Reid was not only the holder of the legal title, but held it for her own benefit and not for her husband's; and this matter depends, in turn, on the good faith of the transactions between them. The element of good faith, that is, of whether the Kansas homestead was put in Mr. Reid's name in order to constitute her the real and beneficial owner of it, was immaterial upon the question of the exemption of that property from liability for Reid's debts, because it was equally exempt, whether he or she owned it. But if the conveyance he made to her was colorable and made with the purpose and understanding that he should continue the beneficial owner, and with such an arrangement in force, it was traded for the Missouri property, the title to which was taken in her name with the same understanding and purpose, Reid paid for and became the real owner of the latter property. If those were the facts, the decision of this court in State Bank v. Dougherty is directly in point. Dougherty was in debt to a bank which obtained a judgment against him. When the debt was incurred, Dougherty owned a farm in Iowa, which he sold later and invested part of the price in a farm in Barton County, Missouri, moved with his family from Iowa on the tract and occupied it as a homestead. The Iowa land, with the proceeds of which the Barton County land had been purchased, was Dougherty's home-

stead and exempt from his debts; and the contention was that having been thus purchased, the Barton County land enjoyed the like exemption. In support of that proposition it was asserted Section 3623 (R. S. 1899; now Sec. 6712, R. S. 1909) protected the Barton home-stead from execution. The purport of the section was that when the head of a family had acquired a new home-stead with the consideration derived from the sale or other disposition of a prior one, the new one should "not be liable for causes of action against it for which such prior homestead would not have been liable;" but that after the exchange the prior homestead should be liable for the debts. The decision was that as the plain-tiff's cause of action had accrued before Dougherty acquired the Barton County homestead and before his deed was filed for record, it was subject to the plaintiff's execution; that the exemption contemplated by Section 3622 (3623?) only applied when the prior homestead, with the proceeds of which the second one was obtained, was in Missouri, so that the provision of the statute that the prior homestead should be liable for the debts of its former owner in lieu of the new one, would govern; that the statutes of Missouri had no extraterritorial force, and were inapplicable unless both homesteads were located in this State. The opinion declared our statutes had nothing to do with the prior homestead in Iowa; for the Legislature would never have attempted to sub-ject a homestead in Iowa, or any other state, to a house-keeper's debt, or make the liability of a subsequent homestead in Missouri depend on the liability of a pre-vious one in another state. It follows from the doctrine thus declared that if, as the court below found, Reid was the real owner of Haddon Hall, plaintiff had a right to proceed against it to collect his judgment. [State Bank v. Dougherty, 167 Mo. 1.]

If the transactions between the defendants were bona-fide—if the Kansas homestead was given or sold to Mrs. Reid to transfer the beneficial as well as the nomi-

nal title to her—the decision in Stinde v. Behrens, 81
Mo. 254, invoked by defendants, would be controlling.
Behrens and his wife had occupied as a homestead a
property in Atchison, Kansas, the title being in Behrens,
the husband. Later he became indebted to Stinde, and
while so indebted he and his wife exchanged said home-
stead for some lots in the City of Carondelet, Missouri,
and had the title to those lots conveyed to the wife Wil-
helmina Behrens. Stinde having recovered a judgment
for his debt against Behrens, took out an execution, un-
der which the Carondelet lots were sold and bought by
Stinde, who then sued to have the conveyance to Wil-
helmina set aside as having been made in fraud of the
creditors of her husband, and to vest the title to the lots
in himself. Construing the laws of Kansas. which were
in evidence, this court held that although Behrens may
have paid the entire consideration for the Kansas home-
stead, the consent of his wife to the conveyance of it in ex-
change for the Carondelet lots was a sufficient considera-
tion for the transfer to her of those lots; that she had a
right to insist that the title to those lots should be put
in her name as the condition on which she would release
her title to the homestead, and taking the title in her
worked no fraud upon Behrens's creditors. In that case
there was a bona-fide understanding between Behrens
and his wife that she was to own in her own right the
lots in controversy.

The evidence in the present case suffices to support
the conclusion of the court below that the Haddon Hall
premises were the property of T. L. Reid, subject to
incumbrances of record, and that the title was put in
Mrs. Reid's name to prevent the collection of debts he
owed to creditors, including plaintiff. The testimony
bearing upon those questions is not so clear and convin-
cing in favor of a contrary conclusion as to lead us to
disregard the finding below. The mode in which Mrs.
Reid advanced $3500 to relieve Reid from his embarrass-
ments in Osage City was not made clear. Part of the

testimony indicates she turned over property belonging to her, and part that she paid money. One question and the answer to it, were as follows:

"Q. Now when, if at any time, did you put anything belonging to you in the property, any property of yours or money, into the hotel property there called the Everett, and why did you do it? A. These notes came due and Mr. Reid couldn't pay them and I told him I had this property and I would turn it in on the notes and pay off as much as I could; it amounted to thirty-five hundred dollars."

Nothing definite was stated about what property she used or whether she turned it over to Reid's creditors in kind or sold it and used the proceeds to pay his notes. The evidence is significant that when the Kansas property was exchanged for the Haddon Hall premises, Reid wanted the deed to the latter made to his daughter and wife jointly, but was talked out of that arrangement. Plainly there was an understanding that Mrs. Reid was not to be the absolute owner, for she agreed to execute some kind of a writing in favor of the daughter and did so, but the writing was not put in evidence. After the exchange had been made, Reid conducted Haddon Hall Hotel as proprietor, took out the license in his own name, and with the consent of his wife, deposited part of the money in her name and part in the name of his daughter. We abide by the finding of the trial judge, based as it was, not only on the statements of the witnesses, but on the manner in which their testimony was given.

II. It is contended plaintiff's action will not lie because no execution had been issued on his judgment against Reid and returned unsatisfied. Ordinarily, before a creditor's bill can be maintained by a judgment creditor, he must show he had exhausted his **Creditor's Bill.** remedy at law by taking out an execution on his judgment, which had been returned unsatisfied for lack of property whereon to levy. An exception is allowed to this rule if it is proved that it would

have been useless to issue an execution because the debtor owned nothing that could be reached by it. [Merry v. Fremon, 44 Mo. 518; Turner v. Adams, 46 Mo. 99; 5 Ency. Pl. & Pr. 521.] The evidence established beyond question that Reid owned nothing in his own name, unless it was the land in Texas, beyond the process of a Missouri court. He testified himself that he had nothing.

III. Another point urged is that as the judgment of plaintiff ceased to be a lien three years after its date, there was no lien on the Haddon Hall property when it was purchased; hence no execution could be levied on it.

Judgment Lien. This point is without merit. If the property belongs to Reid, although the lien of the judgment itself has expired, plaintiff is entitled to an execution and levy on the property at any time within ten years after the date of the judgment. [R. S. 1909. sec. 2133; Goddard to use v. Delaney, 181 Mo. 564, 571.] And so long as the right to an execution exists, a judgment creditor may institute a suit to subject property of his debtor to the execution. [Zoll v. Soper, 75 Mo. 460.]

The judgment is affirmed.

All concur, except *Woodson, J.*, absent.