STATE OF MISSOURI, EX REL., TALBERT M. BUSBY, RELATOR, v. RAY G. COWAN, JUDGE DIVISION No. 7, CIRCUIT COURT OF JACKSON COUNTY, MISSOURI, RESPONDENT.—107 S. W. (2d) 805.

Kansas City Court of Appeals. August 12, 1937.

*Harry A. Hall* for relator.

*L. L. Watts* and *George V. Aylward* for respondent.

BLAND, J.—This is an original proceeding in prohibition. Upon the filing of the petition for the writ we issued our preliminary rule. Respondent filed a return, raising issues of law, whereupon, relator

filed his motion for judgment on the pleadings. Under the circumstances, the facts stated in the petition for the writ will be taken as true. [State ex rel. v. Caulfield, 234 Mo. 331.]

These facts show that respondent is one of the Judges of The Circuit Court of Jackson County, Missouri; that on October 20, 1936, one Madalyn Busby filed a suit in equity against the relator in the Circuit Court of Jackson County, Missouri, in the nature of a creditor's bill, seeking to collect an alimony judgment.

The petition in equity alleged that on October 18, 1934, plaintiff recovered a judgment against the relator in the Circuit Court of Jackson County, for alimony, payable $10 per week, in advance, and for an attorney's fee of $50; that there were accumulations upon the judgment in the sum of $1100; that plaintiff had exhausted all of her legal remedies for the collection of the judgment; that the relator was a regular employee in the Fire Department of Kansas City, a municipal corporation, receiving a salary of $135 per month; that said salary was not subject to garnishment, execution or any legal process; that relator was possessed of no property other than his salary out of which the judgment could be satisfied; that defendant had steadfastly refused to pay the installments due upon the judgment; that he had defied the officers of the court in the collection of the judgment and had threatened to continue to collect and conceal his wages for the purpose of avoiding its payment. The petition prayed that a receiver be appointed to receive the salary of the defendant and to pay it over to the plaintiff to apply upon the judgment and that relator be restrained and enjoined from indorsing, transferring, assigning, or in any manner converting into cash any of the salary checks received by him from the city, except for the purpose of transferring the same to the receiver.

The facts further show that the cause came on for hearing before respondent, judge, and that he appointed a temporary receiver, who will, unless prevented, retain and take charge of relator's salary. The prayer of the petition for the writ asks that respondent be prohibited from taking charge and control of relator's salary or from placing the same in the custody or control of the receiver.

It was admitted that, under the provisions of section 1398, Revised Statutes 1929, relator's employer, being a municipal corporation, is not subject to garnishment. In fact, plaintiff based her cause of action in equity upon the ground that she had no remedy on account of said statute. Relator, by reason of the same statute, claims that plaintiff cannot maintain a creditor's bill to reach his salary, for the reason that to permit such would be doing indirectly what the law forbids to be done directly.

We think relator's contention must be sustained. In Geist v. City of St. Louis, 156 Mo. 643, 650, the Supreme Court quoted, approvingly, the following from Addyston Pipe Co. v. Chicago, 170 Ill. l. c.

584: " 'If, as we have held, a municipal corporation is not liable to the process of garnishment, upon what ground can a creditor's bill be maintained against a municipal corporation? If it is contrary to public policy to permit the one, upon the same ground and for like reasons must not the other be denied? The process of garnishment and a creditor's bill are, in effect, instituted for the same purpose. They are, as a general rule, instituted to reach money in the hands of a third party due and owing from a judgment debtor to a judgment creditor. A reference to the statute under which the two proceedings are instituted will show their similarity.' "

In the Geist case it was held that where a judgment has been obtained against a resident of the State who is employed by a municipal corporation and execution is issued and returned *nulla bona,* neither by a suit in equity against said employee and the city, nor by statutory garnishment, can the city be compelled to pay such judgment creditor the salary due such employee.

However, respondent says that her suit in equity is not against the city but against the employee, only; that the statute prohibiting garnishment proceedings against the city is based, not upon any theory that the employee should be protected from annoyance and humiliation, but the statute is for the purpose of protecting the city, itself, and, in this connection respondent cites Hawthorn v. City of St. Louis, 11 Mo. 59. That case was decided before the enactment of the statute in question and the Supreme Court held that even then a municipal corporation could not be summoned as garnishee for the reason that, on the ground of public policy, the officers of a city should not be called upon to devote their time to controversies between debtors and creditors, in which the municipality has no interest.

The majority of the courts of this country have held, even in the absence of a statute, that a municipal corporation cannot be subjected to garnishment proceedings. Some of them base their holding upon the theory stated in the case of Hawthorn v. City of St. Louis, supra, and others upon that theory and upon the further ground that it is to the interest of the public that municipalities have the largest possible field from which to select competent, reliable and skillful men to perform services, and that if persons are to be compelled to transfer their claim for compensation to creditors then, those who are in debt are not likely to apply for such employment and that if they actually take employment they may be caused to, or voluntarily, give up their positions if their salaries were garnished. [See Morgan v. Rust (Ga.), 28 S. E. 419; McGrew v. McGrew, 38 Fed. (2d) 541; Gerald v. Walker (Ala.), 78 So. 856; Joffe v. McAdory (Tenn.), 79 So. 391; Goodwin State Bank v. Wisc., 263 Ill. App. 291.]

We are not called upon to speculate as to the reason that actuated the Legislature in enacting the statute. It is sufficient for us to know that such a statute is in existence. In such circumstances, to coun-

tenance a proceeding of this kind would result in permitting the creditor to accomplish indirectly what she is forbidden to do directly. It is "settled law that a creditor's bill is considered in the same category as a garnishment proceeding when filed for the same purpose." [Goodwin State Bank v. Wisc., supra, l. c. 295; Addyston Pipe & Steel Co. v. City of Chicago, 170 Ill. 580.] We have examined Watterbury v. Commbs, 10 Mont. 515; Clarke v. Bert (Kan.), 42 Pac. 733, and Riggin v. Hilliard, 54 Ark. 451, cited by the respondent and find them not in harmony with Geist v. City of St. Louis, supra.

There is another reason why the suit in equity cannot be maintained. Unearned salary cannot be reached by a creditor's bill. [Browning v. Bettis (N. Y.), 8 Page 568; Valentine v. Williams, 159 N. Y. Supp. 815; Tompers v. Tompers, 159 N. Y. Supp. 817; McGrew v. McGrew, supra; 15 C. J., pp. 1401, 1403; Raithel v. Hamilton-Schmidt Surgical Co., 48 S. W. (2d) 79; Hearne v. Keath, 63 Mo. 84.] "Salary completely earned before the filing of a bill by performance of all services required to entitle the debtor thereto may be subjected to the payment of his debts, although not payable when the bill is filed. But unearned salary is not reachable, since neither the creditor nor the court could compel the debtor to work out his pay on the contract and earn the salary for the use of the creditor." [15 C. J., p. 1407; McGrew v. McGrew, supra. See, also, 53 C. J., p. 31.]

However, the respondent says that he will order the receiver to take charge of relator's salary checks only as they fall due. A trouble with this contention is that there is no fund over which the court can now assume control. [Valentine v. Williams, supra.]

Respondent insists that the receiver was properly appointed under section 1355, Revised Statutes 1929, which provides, among other things, that when a divorce is granted to a wife the court may order the husband to give security for alimony and maintenance and upon his neglect to do so, or upon default of himself or his sureties to pay or provide such alimony and maintenance; he may award an execution for the collection thereof, "or enforce the performance of the judgment or order by sequestration of property." The term "sequestration of property" as used in this statute is held to mean a setting apart of the property so that it may be subject to execution and payment of the judgment. [Watts v. Watts, 263 S. W. 421, 422.] One of the well recognized methods of sequestering property is by the appointment of a receiver. [High on Receivers (4 Ed), pp. 8, 578, 579, 580, 581.]

We know no better way to answer this contention of the respondent than to quote from Tompers v. Tompers, 159 N. Y. Supp., l. c. 818, as follows:

"It seems to be settled that the plaintiff could not reach the defendant's salary by means of a creditor's bill except to the extent that it had accrued at the time of the commencement of the action. [Browning v. Bettis, 8 Page, 568; Valentine v. Williams, 159 N. Y. Supp. 815.] If the future earnings could not be reached by a suit in equity, it would be anomaly to hold that upon an application to sequester the defendant's property under section 1772 of the Code of Civil Procedure, earnings accruing subsequent to the appointment of the receiver could be claimed by him. It was not suggested in either Moore v. Moore, 143 App. Div. 428, 128 N. Y. Supp. 1077, that in the sequestration proceedings in those cases anything more was being accomplished than might have been attained by an action in equity. On the contrary, in Moore v. Moore the court rested its decision in part, at any rate, upon the proposition that what was there allowed to be done by sequestration could undoubtedly have been done in a judgment creditors' bill. [143 App. Div. 436-437, 128 N. Y. Supp. 259.]

"The present case differs from the two cases last cited in that in those cases the right to the income in the one case and the pension in the other was vested in the defendant at the time sequestration was sought. This was expressly pointed out in Moore v. Moore, 143 App. Div. 434, 128 N. Y. Supp. 259, where the court noted that the payment of the income during defendant's life did not depend on any contingency. In the present case, however, the defendant was entitled to nothing except in payment for services performed. While the rate of payment is described by the written agreement, that agreement does not of itself give the defendant any right to receive salary or income. If he does receive salary, it will be only in payment for services to be rendered. The case therefore comes within the principle of Browning v. Bettis, supra, and the cases there discussed."

One of the authorities relied upon by the respondent is Moore v. Moore, 128 N. Y. Supp. 259. It will be noted that in the Tompers case the Moore case was distinguished.

We have examined the cases cited by respondent including Hagemann v. Pinska, 37 S. W. (2d) 463; Pickel v. Pickel, 243 Mo. 641; Pickel v. Pickel, 236 S. W. 287, and also, section 1399, Revised Statutes 1929, and find them of no aid to her.

However, respondent insists that even though plaintiff's petition in the circuit court stated no cause of action and, for that reason, was demurrable still, under section 998, Revised Statutes 1929, he had jurisdiction and authority to appoint a receiver and the remedy of the relator is by appeal and not by writ of prohibition.

While the respondent has jurisdiction to appoint a receiver in a proper case, we are of the opinion that he acted, in this case, wholly in excess of his jurisdiction and for that reason prohibition is the proper remedy. [State ex rel. v. McQuillin, 246 Mo. 517, 532; State

ex rel. v. Mulloy, 52 S. W. (2d) 402; State ex rel. v. Mulloy, 43 S. W. (2d) 806; State ex rel. v. Burney, 193 Mo. App. 326.]

It appears that relator did not attack, by demurrer, the petition in the equity suit, but merely filed answer. However, this is not a question of the petition being amendable. The petition wholly failed to state a cause of action and cannot be amended to state one. The court had no right to grant the relief sought to be obtained, that is to appoint a receiver to take charge of relator's salary, and there is no way in which the petition could be amended so as to give respondent the right to appoint one.

Whether relator had an adequate remedy by appeal from the drastic order of the court depriving him of his entire salary which, is his sole source of income, is doubtful. However, it is only necessary for us to quote from State ex rel. v. Wurdeman, 232 S. W. 1002, 1004, as follows: ''While we are satisfied that relator had a complete, effective and speedy remedy by appeal, and this court, in the exercise of its discretionary powers in issuing writs of prohibition, might well have refused to have issued the preliminary rule, yet since the cause is before us, and we are plainly within our powers in so doing, we will proceed to dispose of the case on its merits.'' [See, also, State ex rel. v. Higbee, 43 S. W. (2d) 825, Supreme Court of Missouri in Banc.] The cases last cited by us are later than those cited by the respondent on this point.

The peremptory writ is made permanent. All concur.