596 F.2d 1353
 UNITED STATES ex rel. Sam GOLDMAN, Petitioner-Appellant,
v.
The Honorable James H. MEREDITH, Chief Judge, The Honorable
John F. Nangle, Judge, W. H. Blumenthal, Secretary
of the Treasury, Respondents.
Appeal of MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.
 No. 78-1622.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1978.
Decided April 24, 1979.
Rehearing Denied May 9, 1979.
 
 Stuart J. Radloff, Friedman & Fredericks, Clayton, Mo., argued and on brief, for petitioner-appellant.
 Gerre S. Langton, Evans & Dixon, St. Louis, Mo. (argued), and Henry D. Mehghini, St. Louis, Mo., on brief, for Merrill Lynch, et al.
 Joseph Moore, Asst. U. S. Atty., St. Louis, Mo. (argued), and Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief, for Secretary of Treasury.
 Before STEPHENSON and McMILLIAN, Circuit Judges, and ROBINSON,* Senior District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 This case concerns the validity of several orders entered by the district court[1] in supplementary post-judgment proceedings to enforce its judgment. It also raises a question that appears to be one of first impression, that is, whether book-entry Treasury bills are subject to garnishment proceedings.
 
 
 2
 In the underlying litigation appellee, Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter Merrill Lynch), sued appellant, Sam Goldman (hereinafter petitioner), to recover a deficiency of $119,145.00 in petitioner's commodities margin trading account. After a bench trial, judgment was entered in favor of Merrill Lynch for the amount of the deficiency plus interest and costs.[2] Petitioner filed a notice of appeal but did not post a supersedeas bond. Therefore, Merrill Lynch proceeded to execute upon petitioner's property to satisfy its judgment; however, the execution was returned unsatisfied.
 
 
 3
 Merrill Lynch then instituted supplementary post-judgment proceedings[3] which included the submission of written interrogatories and a judgment debtor examination. These proceedings disclosed that petitioner's property consisted of two apartment buildings in Clayton, Missouri, substantial savings and checking accounts at local banks, and some U.S. Treasury bills. Petitioner further revealed that he had disposed of most of this property[4] in January and February of 1978, before the trial, and had used the proceeds to purchase book-entry Treasury bills. Petitioner invested approximately $205,000 in book-entry Treasury bills.
 
 
 4
 In light of this information, Merrill Lynch attempted to register the judgment in the United States District Court for the District of Columbia,[5] pursuant to 28 U.S.C. § 1963.[6] The clerk of the court refused to register the judgment because it was not "final by appeal." See Abegglen v. Burnham, 94 F.Supp. 484, 486 (D.Utah 1950) (holding a judgment of a district court does not become "final by appeal" within the meaning of the statute providing for registration of such judgments in another district until the case has been disposed of by appeal); Accord, Stanford v. Utley, 341 F.2d 265 (8th Cir. 1965); Lipton v. Schmertz, 68 F.R.D. 249 (S.D.N.Y.1974).
 
 
 5
 Merrill Lynch next caused a writ of garnishment to be issued to the Federal Reserve Bank in St. Louis, Missouri. It was returned unsatisfied for the reason that the Federal Reserve Bank held neither petitioner's book-entry Treasury bills account nor any evidence of indebtedness belonging to petitioner. Confronted with the prospect that petitioner's assets could not be reached through garnishment proceedings, Merrill Lynch sought equitable relief in the district court on July 12, 1978, by filing an application for a temporary restraining order, a preliminary injunction and a mandatory injunction. On the same day, the district court issued its order to show cause and a temporary restraining order prohibiting petitioner from transferring or cashing out his interest in the book-entry Treasury bills to the extent of $131,655.22 (judgment plus interest and costs at that date). A preliminary hearing was set for July 21, 1978.
 
 
 6
 After the preliminary hearing at which the parties stipulated to most of the facts at issue, the district court entered its order on July 31, 1978, granting a preliminary injunction and further ordering petitioner to cash sufficient book-entry Treasury bills to satisfy the outstanding judgment. The latter part of the order was stayed pending disposition of the appeal.
 
 
 7
 Prior to the issuance of the preliminary and mandatory injunctions, Merrill Lynch had caused a writ of execution and summons to be issued to the Department of the Treasury (hereinafter the Treasury) on July 18, 1978. The answer of the Treasury disclosed that, as of the date of service, it held two book-entry Treasury bills in petitioner's account (total value of $170,000) and had marked the account so petitioner could not withdraw them without prior authorization. The answer further stated that because book-entry Treasury bills were not represented by a definitive security in the form of an engraved certificate, the bills would have to be transferred through the Federal Reserve Bank communication system into a book-entry account maintained by or through a member bank in the Federal Reserve System before they could be subject to execution and sale.
 
 
 8
 Thereafter, on August 18, 1978, the district court ordered the U.S. Marshal to seize petitioner's book-entry Treasury bills, to transfer them through the Federal Reserve Bank system, and to sell them in satisfaction of the judgment. On August 25, 1978, the district court further ordered the Treasury bills to be sold through a Federal Reserve Member bank, at the market price, and without prior public notice.
 
 
 9
 Three days later, on August 28, 1978, petitioner filed a petition for a writ of mandamus or alternatively for a writ of prohibition, challenging the validity of the district court orders and the recognition of such orders by the Treasury. Petitioner sought to have the orders set aside and to have the Treasury prohibited from transferring the book-entry Treasury bills without petitioner's consent.
 
 
 10
 On September 5, 1978, this court ordered the above orders of the district court stayed pending the appeal and hearing on the petition for mandamus. We further ordered petitioner not to cash, transfer, or in any way alter the status of his book-entry Treasury bills in the amount of $130,000.00 pending the final judgment of the court in this matter.
 
 
 11
 As a basis for relief petitioner argues that (1) the district court did not have jurisdiction to grant equitable relief, (2) the district court erred in granting the preliminary and permanent injunctions, and (3) the Treasury violated its own regulations by restrictively marking petitioner's book-entry Treasury bills. For the reasons discussed below, we are unable to agree with petitioner and therefore deny the petition for writ of mandamus or in the alternative for writ of prohibition.
 
 
 12
 First, petitioner argues that the district court exceeded its jurisdiction in granting Merrill Lynch injunctive relief. Petitioner argues that Merrill Lynch sought equitable relief in the form of a "creditor's bill" and that such relief is not available under Missouri law. We disagree. F.R.Civ.P. 69(a) provides in part:
 
 
 13
 Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.
 
 
 14
 Thus, in the absence of a controlling federal statute, the district court has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law. E. G., North Pacific Steamship Co. v. Pyramid Bulkcarriers, Inc., 515 F.2d 426 (5th Cir. 1975); Hamilton v. MacDonald, 503 F.2d 1138 (9th Cir. 1975); Nelson v. Maiden, 402 F.Supp. 1307 (E.D.Tenn.1975); Douglass v. First National Realty Corp., 351 F.Supp. 1142 (D.D.C.1972).
 
 
 15
 Our review of Missouri law persuades us that equitable relief in the form of a creditor's bill is an available creditor's remedy, under the appropriate circumstances. E. g., Buckley v. Maupin, 344 Mo. 193, 125 S.W.2d 820 (1939); O'Connell v. Smith, 131 S.W.2d 730 (Mo.Ct.App.1939); State ex rel. Busby v. Cowan, 232 Mo.App. 391, 107 S.W.2d 805 (1937); Cf. Haase v. Chapman, 308 F.Supp. 399 (W.D.Mo.1969) (appointment of receiver). In general, a creditor's bill is considered the equitable equivalent of garnishment or execution and comparable to proceedings supplementary to and in aid of execution. See Pierce v. United States, 255 U.S. 398, 401-02, 41 S.Ct. 365, 65 L.Ed. 697 (1921); State ex rel. Busby v. Cowan, supra, 107 S.W.2d at 807. By the means of a creditor's bill, a judgment creditor seeks to satisfy his judgment from property of the judgment debtor which is not subject to execution. Such relief is thus appropriate only upon a showing by the judgment creditor that he has no adequate legal remedy. See O'Connell v. Smith, supra, 131 S.W.2d at 733. Missouri case law indicates that this type of equitable relief is within the general equitable jurisdiction of Missouri state courts and further that it is a remedy "as comprehensive in scope and purpose as the remedy provided by the statutory enactments in other states." Geist v. City of St. Louis, 156 Mo. 643, 57 S.W. 766, 767 (1900).
 
 
 16
 We also find the cases cited by petitioner, First National Bank of Boston v. Santisteban, 285 F.2d 855 (1st Cir. 1961), and Nelson v. Maiden, supra, to be distinguishable because in each case the local law did not provide for the type of relief sought in supplementary proceedings for the enforcement of judgments. As noted above, our reading of Missouri law indicates that a creditor's bill is, by judicial construction, one of the available supplementary proceedings in aid of execution in Missouri. We read State ex rel. Busby v. Cowan to support our analysis of the availability of a creditor's bill as a judgment creditor's remedy. The court in State ex rel. Busby v. Cowan Recognized that a creditor's bill was a proper remedy but was forced to reject it in the case before it because a state statute expressly prohibited garnishment proceedings against municipal corporations. 107 S.W.2d at 807. Apart from the Treasury regulations, discussed further below, we are not confronted with a similar prohibition in the present case.
 
 
 17
 Petitioner next challenges the district court's granting of injunctive relief. He argues that the district court improperly reached the merits of the case by granting the permanent injunction after the preliminary hearing without expressly ordering consolidation and without giving the parties adequate notice. See F.R.Civ.Pro. 65(a)(2). Ordinarily, it is improper to dispose of a case on the merits after the preliminary hearing; "(t)here are certain circumstances, however, in which a final adjudication after a hearing on a preliminary injunction is appropriate even without formal consolidation." 11 C. Wright & A. Miller, Federal Practice and Procedure § 2950, p. 490 (1973). For example, disposition on the merits may be appropriate whenever the evidence presented at the preliminary hearing indicates that there is no conflict of material fact that would justify holding the full trial on the merits. E. g., Bright v. Nunn, 448 F.2d 245, 247 n.1 (6th Cir. 1971) (determinative facts uncontested); Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67, 70 (2d Cir.), Cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966) (no triable issue of fact). But see Progress Development Corp. v. Mitchell, 286 F.2d 222, 234 (7th Cir. 1961) (absence of material fact issue at preliminary hearing does not justify reaching the merits); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2950, p. 492 (1973).
 
 
 18
 We do not find the De facto consolidation of the preliminary hearing and the trial on the merits to have been improper in the present case. We note that most of the facts were stipulated by the parties. The only disputed question, whether the book-entry Treasury bills purchased by petitioner were subject to garnishment, is one of law and remains contested at this proceeding. Moreover, petitioner continues to urge that the book-entry Treasury bills are not subject to garnishment, a position which can only support the conclusion of the district court that Merrill Lynch had no adequate remedy at law. In our view there was no conflict of material fact which justified the holding of a full trial on the merits. We note, however, that it is certainly preferable to expressly order consolidation after giving adequate notice to the parties. See, e. g., Pughsley v. 3750 Lake Shore Drive Cooperative Bldg., 463 F.2d 1055, 1057 (7th Cir. 1972).
 
 
 19
 Petitioner also argues that the district court erred in granting injunctive relief because Merrill Lynch failed to establish a reasonable probability of irreparable injury or a substantial probability of success on the merits. Petitioner argues again that this type of equitable relief is not an available form of supplementary relief in Missouri. As discussed above, our reading of Missouri case law is to the contrary. Petitioner further argues that Merrill Lynch failed to show a reasonable probability of irreparable injury because there was no evidence petitioner had made any fraudulent conveyances, threatened to free the jurisdiction, made himself insolvent or committed any other action to defraud his creditors. Missouri case law indicates, however, that the return of a writ of execution unsatisfied has been held to establish prima facie, if not conclusively, that the judgment creditor has exhausted his legal remedies and may maintain an action for equitable relief. E. g., Steele v. Reid, 284 Mo. 269, 223 S.W. 881 (1920); O'Connell v. Smith, supra, 131 S.W.2d 730.
 
 
 20
 We note that Merrill Lynch argues that the issue of the propriety of injunctive relief is moot and should be dismissed because, subsequent to the order of July 31, 1978, the Treasury affirmatively responded to the writ of execution issued by the district court[7] and restrictively marked petitioner's book-entry account. Therefore, Merrill Lynch argues that the book-entry Treasury bills may be reached by writ of execution and no equitable relief is necessary. This argument raises petitioner's final point: whether the Treasury acted in violation of its own regulations by accepting the writ of execution and restrictively marking petitioner's book-entry account. Petitioner argues the action of the Treasury violated 31 C.F.R. § 350.16(b), which provides: "The Treasury will not under any conditions accept notices of pending judicial proceedings, or of judgments in favor of creditors or others, or of any claims whatsoever, for the purpose of suspending or modifying any book-entry account or any transaction in book-entry Treasury bills." It is petitioner's position that this regulation, in effect, shields book-entry accounts from judicial process. We cannot accept this position.
 
 
 21
 In the absence of an express directive, we will not create a sanctuary for judgment debtors. We do not read 31 C.F.R. § 350.16(b) to insulate petitioner's book-entry account from judicial process. In our opinion, 31 C.F.R. § 350.16(b) must be read with the general regulations governing United States securities, especially those regulations concerning transfer of United States securities through judicial proceedings. See 31 C.F.R. §§ 306.0, 306.100, 306.101. These regulations provide that "(t)he Treasury will recognize valid judicial proceedings affecting the ownership of or interest in transferable securities, upon presentation of the securities together with evidence of the proceedings." 31 C.F.R. § 306.100. The evidence necessary is described in 31 C.F.R. § 306.101: "copies of a final[8] judgment, decree, or order of court and of any necessary supplementary proceedings must be submitted." These regulations demonstrate that the Treasury will recognize judicial process, given the appropriate evidence.
 
 
 22
 Frankly, we are somewhat perplexed by the language used in31 C.F.R. § 350.16(b). At first glance, this regulation does appear to provide petitioner with his sought-after sanctuary. We believe, however, it is wiser to construe this regulation so as to effect an accommodation with the general regulations discussed above. We read 31 C.F.R. § 350.16(b) to prohibit the Treasury only from accepting Notices of pending judicial proceedings, Notices Of judgments in favor of creditors or others, or Notices of any claim.[9] By this construction, we believe the Treasury can, without violating 31 C.F.R. § 350.16(b), recognize valid judicial proceedings, specifically writs of execution. We also read the regulations to permit the Treasury to recognize evidence of valid judicial proceedings other than writs of execution, that is, final judgments, decrees or orders of court and any necessary supplementary proceedings authenticated and certified under court seal. See 31 C.F.R. § 306.101. We do not believe, however, that the Treasury should recognize letters or other communications unsupported by authenticated copies of final judgments or supplementary proceedings.
 
 
 23
 Ordinarily, supplementary proceedings in aid of execution would not present such difficulties. We believe, however, that the unique character of this new form of government security deserves further discussion. Book-entry Treasury bills are issued in the form of an entry on the records of a Federal Reserve bank or the Treasury; there is no engraved certificate or other tangible evidence, only the account entry itself. A depositor receives only confirmations (in the form of an "advice") of transactions in his book-entry account. By eliminating securities in the form of engraved certificates, the Treasury sought to protect against losses due to theft, mishandling and counterfeiting; to reduce costs of issuing, storing and delivering securities in physical form; and to ease the burden of paperwork created by the growing volume of public debt transactions. 41 Fed.Reg. (Treasury Department Circular, Public Debt Service 26-76, Dec. 6, 1976). Book-entry Treasury bills in definitive form as engraved certificates were issued for a limited period of time (until December 31, 1978), in denominations of $100,000, and only to "eligible entities" required by law to hold definitive securities. See 31 C.F.R. § 350.17.
 
 
 24
 It is apparent from the above discussion that book-entry Treasury bills represent a new form of government security that is, by design, intangible. In our opinion, this intangible nature necessitates the injunctive relief granted in the present case, despite the recognition by the Treasury of valid legal proceedings as discussed above. This is because there is simply nothing capable of being physically executed upon and then transferred. In its answer to the interrogatories (Exhibit B), the Treasury indicated the book-entry Treasury bills would first have to be transferred through the Federal Reserve bank communications system into a book-entry account maintained by or through a member bank in the Federal Reserve Bank System and then sold. On the basis of this information, the district court authorized the U.S. Marshal to make a certified request on behalf of petitioner to transfer the book-entry Treasury bills through the Federal Reserve bank communications system and to effect the execution sale in satisfaction of the judgment. In view of the fact that the book-entry Treasury bills at issue are now mature (and overdue), See 31 C.F.R. § 306.25(b), petitioner, or, if necessary, the U.S. Marshal, authorized to act on petitioner's behalf, now has only to transfer the book-entry Treasury bills by certified request,[10] redeem them, and apply the proceeds in satisfaction of the judgment.
 
 
 25
 In sum, we find that (1) equitable relief in the form of a creditor's bill is available, under the appropriate circumstances, to a judgment creditor under Missouri law in supplementary proceedings in aid of execution; (2) the Treasury is not prohibited from recognizing valid judicial proceedings affecting ownership of or interest in book-entry Treasury bills upon presentation of the necessary evidence[11]; and (3) even though the Treasury will recognize valid judicial proceedings, the unique nature of book-entry Treasury bills and the necessity of transfer through the Federal Reserve bank communications system, by a certified request made by or on behalf of the depositor, makes injunctive relief necessary.
 
 
 26
 Accordingly, the petition for writ of mandamus or in the alternative for writ of prohibition is denied. Because the book-entry Treasury bills at issue are now mature, and in fact overdue, we remand to the district court with directions to modify its orders and to direct petitioner to make a certified request to transfer his book-entry Treasury bills within 10 days, to redeem them and to apply the proceeds to satisfy the outstanding judgment, or, if petitioner fails to make a certified request to transfer within 10 days, to authorize the U.S. Marshal to do so on petitioner's behalf.
 
 
 
 *
 The Honorable Richard E. Robinson, United States Senior District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri (orders of July 31 and August 25, 1978); the Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri (order of August 18, 1978)
 
 
 [2]
 The judgment was recently affirmed by this court. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman, 593 F.2d 129 (8th Cir. 1979), Aff'g 451 F.Supp. 223 (E.D.Mo.1978)
 
 
 [3]
 F.R.Civ.Pro. 69(a); V.A.M.R. 90.02 Et seq
 
 
 [4]
 Petitioner gave one of his two apartment buildings to a woman friend and sold the other building in February of 1978. Petitioner does have several hundred dollars in local bank deposits which could be reached by execution
 
 
 [5]
 Petitioner's book-entry Treasury bills are held in an account maintained by the Treasury in Washington, D. C. See 31 C.F.R. § 350.7(a) (1978)
 
 
 [6]
 28 U.S.C. § 1963 provides in part (emphasis added):
 A judgment in an action for the recovery of money or property now or hereafter entered in any district court Which has become final by appeal or by expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
 
 
 [7]
 Although the Treasury has evidently waived any objection to the issuance of process in the present case and has consented to follow the orders of the district court and this court in this matter, See Brief of Respondent W.H. Blumenthal, Secretary of the Treasury, at 7, we raise a question about the validity of such process. In our opinion, the district court sitting in Missouri did not have the jurisdiction to issue a writ of execution in favor of a private party to the Treasury in Washington, D.C. See F.R.Civ.Pro. 4(f); V.A.M.R. 76.06; Globe Indemnity Co. v. Roe, 37 F.Supp. 761, 762 (S.D.N.Y.1941); 12 C. Wright & A. Miller, Federal Practice and Procedure § 3013, p. 70 (1973); Compare 28 U.S.C. § 2413 (executions in favor of the United States may be executed anywhere in the United States)
 
 
 [8]
 Presumably "final judgment" here refers to "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), and not final by appeal or by expiration of time for appeal
 
 
 [9]
 Petitioner argues that under Missouri practice and procedure a "notice of garnishment" is necessary to confer jurisdiction over the property garnished, See Meyer v. Meyer, 571 S.W.2d 477 (Mo.App.1978); Fulkerson v. Laird, 421 S.W.2d 523 (Mo.App.1967), and therefore falls within the prohibition in 31 C.F.R. § 350.16(b) against the acceptance of "notices." We think petitioner is reading the unacceptable "notices" referred to in 31 C.F.R. § 350.16(b) too narrowly. In order to accommodate the Treasury's recognition of proper evidence of valid judicial proceedings in 31 C.F.R. § 306.100, we read "notices" to refer to some communication other than any necessary supplementary proceedings, 31 C.F.R. § 306.101, for example, a letter referring to a judgment instead of a certified copy of the judgment
 
 
 [10]
 We are unsure whether a certified request made by or on behalf of the depositor is a prerequisite to transfer the book-entry Treasury bills. If it is not, then we see no difficulty with the Treasury transferring the book-entry Treasury bills, without a certified request by or on behalf of the depositor, upon presentation of certified copies of a final judgment, decree or order and any necessary supplementary proceedings or pursuant to other valid judicial proceedings (i. e., a writ of execution)
 
 
 [11]
 We do not read the regulations to restrict "valid judicial proceedings" to enforcement of the judgment by writ of execution